UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NOELLE L. MAYES, | : | |
|     Plaintiff, | : | |
| | : | No. 3:18-CV-429 (VLB) |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, NEW | : | March 25, 2019 |
| HAVEN POLICE DEPARTMENT, | : | |
| LESLEE WITCHER, STEVE | : | |
| MCMORRIS, ENDRI DRAGOI, | : | |
| GLEN OLIWA, | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS [DKT. 18]

Before the Court is the Motion to Dismiss filed by Defendants City of New Haven, New Haven Police Department, Leslee Witcher, Steve McMorris, Endri Dragoi, and Glen Oliwa (collectively "Defendants"). [Dkt. 18]. Plaintiff Noelle L. Mayes ("Plaintiff" or "Mayes") brings this action for declaratory relief, injunctive relief, and damages for alleged violations of her Fourth Amendment rights. [Dkt. 30-1 (Amended Complaint). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

### I. Background

The following facts are taken from the Amended Complaint. [Dkt. 30-1]. The facts alleged in the Amended Complaint are taken as true and construed in the light most favorable to Plaintiff for the purpose of a motion to dismiss. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The assumption of truth applied to the factual allegations does not apply to any legal conclusions or unsupported characterizations of facts. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff Noelle L. Mayes is a resident of Branford, Connecticut and resided in Branford, Connecticut at all times relevant to this action. [Dkt. 30-1, ¶ 6]. Defendants Officers Leslee Witcher, Steven McMorris, E. (Endri)[1] Dragoi, and Glen Oliwa were, at all times relevant to this action, police officers employed by Defendant City of New Haven and Defendant New Haven Police Department. [*Id.* at ¶ 7].

On November 16, 2016, at or around 4:55 PM, Officer Oliwa was dispatched to 74 Day Street, New Haven, due to a harassment complaint. [Dkt. 30-1, ¶ 12]. Resident LaJeffies Hill told Officer Oliwa that Plaintiff was harassing Hill. [*Id.* at ¶ 13]. Hill is a resident of a public housing community. [*Id.* at ¶ 26]. Hill stated that Mayes harassed Hill through Facebook and text messages and that Mayes had "come to [Hill's] home and made a video telling Hill to come outside and fight." [*Id.* at ¶ 14]. Hill identified no witnesses to the video and did not show the police. [*Id.* at 15]. Hill completed a "victim account report." [*Id.* at ¶ 17].

Officer Oliwa submitted an application for a warrant for Plaintiff's arrest. [Dkt. 30-1, at ¶ 16]. Officer Oliwa also conducted "a Connecticut State Police Records check which showed that Noelle Mayes was not incarcerated at the time of this incident." [*Id.* at ¶ 18]. On the warrant application, Officer Oliwa wrote "I did not attempt to contact Mayes, as previous attempts by Hill and the police to contact her have resulted in an escalation in threats towards Hill." [*Id.* at ¶ 16]. Officer Oliwa did not further investigate the statements from Hill that Mayes had

---

[1] The Court takes judicial notice of the fact that "E. Dragoi" in Plaintiff's Amended Complaint refers to "Endri Dragoi." *See* [Dkt. 19 (Memorandum in Support of Defendants' Motion to Dismiss) at 1].

sent her threatening Facebook and text messages. [*Id.* at ¶¶ 21, 22, 24]. Officer Oliwa also did not further investigate Hill's statements that Mayes had traveled to Oliwa's home "threatening to fight her." [*Id.* at ¶ 26]. Following Officer Oliwa's response to the complaint at 74 Day Street, Plaintiff was arrested for "threatening, breach of the peace, and harassment 2nd degree." [*Id.* at ¶ 29].

Following this arrest, Officer Steve McMorris contacted Plaintiff. [Dkt. 30-1, ¶ 32]. Officer McMorris told Plaintiff that Hill attempted to file another complaint against Plaintiff. [*Ibid.*] Plaintiff provided Officer McMorris "with videos and real messages" suggesting that Hill was actually harassing Plaintiff. [*Ibid.*] Officer McMorris advised Plaintiff to change her number and told Plaintiff that "he would speak to a supervisor and make sure her side was documented in the complaint." [*Ibid.*] On December 5, 2016, Plaintiff changed her phone number. [*Id.* at ¶ 33]. On December 14, 2016, Plaintiff again changed her phone number. [*Ibid.*] Plaintiff Provided Officer McMorris with her updated phone number both times it was changed. [*Ibid.*]

On December 15, 2016, at 4:25 PM, Officer Dragoi was dispatched to 74 Day Street due to a harassment complaint. [Dkt. 30-1, ¶ 30]. At 74 Day Street, Officer Dragoi also spoke with LaJeffies Hill, who told Officer Dragoi that Plaintiff was harassing Hill through Facebook and text messages. [*Id.* at 30]. In the arrest warrant, Officer Dragoi wrote that "LaJeffies Hill was in fear for her safety due to seeing Mayes drive down the street she lives on." [*Id.* at ¶ 31]. The harassment that was the subject of this complaint came from a phone number which no longer belonged to Plaintiff. [*Id.* at ¶ 34]. In Officer Dragoi's report of the second

3

arrest, he did not include "the report made by Officer McMorris documenting Mayes' account of the harassment she endured at the hand of LaJeffies Hill." [*Id.* at ¶ 35].

On January 21, 2017, at or around 7:30 AM, Officer Witcher was dispatched to an address in New Haven to respond to a harassment complaint. [Dkt. 30-1, ¶ 44]. "Victim #1,"[2] LaJeffies Hill, told Officer Witcher that Hill "had a protective order…against Noelle Mayes." [*Ibid.*] Hill told Officer Witcher that more than one day prior to the complaint, Plaintiff "came to her house yelling through the mail slot that she was a whore and told her to come outside so she could beat her ass." [*Id.* at ¶ 45]. Hill told Officer Witcher that Hill felt "scared and threatened" by Plaintiff's actions, and that Hill "stated she called the police numerous times and nothing was done." [*Ibid.*] Hill stated that Plaintiff "had posted negative and derogatory things about her on Facebook suggesting she is a prostitute and has her home address online where people could come to her home at all hours of the night." [*Id.* at ¶ 46]. Furthermore, Hill stated that "she feared for her life and her children's lives because [Plaintiff] is crazy and will do anything to destroy her life." [*Id.* at ¶ 47].

On January 26, 2017, Officer Witcher stated that she conducted a records check for the name "Noelle Mayes." [Dkt. 30-1, ¶ 48]. Officer Witcher applied for an arrest warrant, stating in the warrant application "that Noelle Mayes has a criminal restraining order against her" and not "a protective order as previously

---

[2] Given later references to Hill in the Complaint, the Court concludes that "Victim #1" refers to LaJeffies Hill.

stated." [*Ibid.*]  The application also stated that "the restraining order expires Nov. 21, 2017." [*Ibid.*]  The application stated that probable cause existed to arrest Plaintiff for "criminal violation of restraining order, harassment 2nd and threatening 2nd." [*Id.* at ¶ 49].

The protected order to which Officer Witcher referred actually stated the name "Noel Dubios [*sic*]." [*Id.* at 56].  Plaintiff has never changed her last name to "Dubios." [*Id.* at ¶ 58].  There was not a criminal restraining order under the name "Noelle Mayes" with the birthdate "12-19-1984" as of January 26, 2017 or at any other time.  [*Id.* at ¶ 57].  Plaintiff is not related to Hill, never lived with Hill, and is not an ex-partner of Hill's.  [*Id.* at ¶ 60].

Plaintiff timely filed a letter of intent with the office of the Mayor of the City of New Haven, which letter set forth the facts underlying this action.  [Dkt. 30-1, ¶ 10].

II.  <u>Legal Standard</u>

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, a plaintiff must plead "enough

5

facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Rule 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly,* 550 U.S. at 570. A claim is "facially plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III. <u>Discussion</u>

Plaintiff asserts five causes of action. In the first three counts, Plaintiff brings claims for malicious prosecution and false arrest against Defendants Glen Oliwa, Endri Dragoi, and Leslee Witcher for allegedly violating Plaintiff's Fourth and Fourteenth Amendment rights by arresting Plaintiff without probable cause. [Dkt. 30-1, ¶¶ 62-76]. In her fourth count, Plaintiff brings a cause of action for "obstruction of justice in violation of the Brady Rule" against Defendant Steve McMorris. [*Id.* at ¶¶ 77-81]. In plaintiff's fifth count, she brings a cause of action against the City of New Haven for failure to properly train and supervise its officers. [*Id.* at ¶¶ 82-85].

A. <u>Claim Against Defendant City of New Haven Police Department</u>

Defendant argues that a municipal police department is not subject to suit under 42 U.S.C. § 1983 because it is not a municipality nor a "person" within the meaning of § 1983. [Dkt. 19, at 4]. Defendant is correct that the New Haven police department is not subject to suit under the statute. *See Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 163-64 (D. Conn. 2005). Therefore, all claims against the New Haven Police Department are dismissed.

B. <u>Claim Against the City of New Haven</u>

In order to bring a claim against a municipality, a plaintiff must prove that the alleged unconstitutional act "implements or executes a policy, statement, ordinance, regulation, or decision officially adapted and promulgated by the body's officers," or that the alleged act is "visited pursuant to governmental

'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91 (1978). A municipality is not liable for every act of its employees under a "respondeat superior" theory. *Id.* at 690; *Atwood v. Town of Ellington*, 468 F.Supp.2d 340, 353 (D. Conn. 2007). While Plaintiff need not identify in detail the relevant policy or custom, "some degree of specificity is required." *Thurman v. City of Torrington*, 595 F.Supp. 1521, 1530 (D. Conn. 1984). Furthermore, to sustain a claim under § 1983 against a municipality, a plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). When the alleged "policy or custom" is a failure to train employees, a plaintiff must allege that the failure to train amounts to "deliberate indifference to the rights of persons" who came into contact with the untrained employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff does not provide facts to support the inference that the City of New Haven did not adequately train or supervise its employees. Plaintiff alleges no policy, directive, order, or custom that caused the alleged deprivation of Plaintiff's constitutional rights. Plaintiff also does not plead any facts supporting the inference that the City's training or supervision of the Defendant Officers shows "deliberate indifference" to Plaintiff's constitutional rights. Without identifying that causal link, Plaintiff cannot bring this claim against the City. Plaintiff alleges only that because she was arrested three times without probable cause, the City "should be accountable." [Dkt. 30-1, ¶ 84]. Plaintiff also alleges

8

that "the City of New Haven is also at fault for the pattern of arrests without probable cause and not properly training these officers on evidence, investigation, and basic human rights." [Dkt. 30-1, ¶ 61]. Plaintiff does not explain what additional training the City should have provided and identifies no omission in the City's training. Even construing Plaintiff's Amended Complaint liberally, as the Court is required to do, the Amended Complaint does not support a cause of action against the City of New Haven. All claims against the City of New Haven are dismissed.

### C. Claims Against Police Officers

#### 1. Claims Against Officers Glen Oliwa, Endri Dragoi, Leslee Witcher for Malicious Prosecution and False Arrest

##### a. False Arrest

Plaintiff alleges a pattern of incidents between herself and Ms. Hill that frequently involve the New Haven police. Officers investigate potential crimes in order to establish probable cause. Where probable cause has been established, the officer is empowered to make an arrest. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d supra. at 128 (2d Cir. 1997). Thus, if an officer finds probable cause, the officer no longer has a duty to conduct further investigation. Plaintiff alleges that the officers should have more fully investigated the statements made by Ms. Hill to verify if Hill or Plaintiff was in the right. However, each time Plaintiff was arrested, the police officer's duty was only to determine whether probable cause existed for that arrest. Once an officer had probable cause and obtained a warrant, the arrests were lawful.

To sustain her claim for the constitutional tort of false arrest under § 1983, Plaintiff must plead a cause of action for false arrest under Connecticut law. *See Russo v. City of Bridgeport,* 479 F.3d 196, 203 (2d Cir. 2007) ("In analyzing claims alleging the constitutional tort of false arrest, we have generally looked to the law of the state in which the arrest occurred.") (internal quotation marks omitted). A plaintiff cannot sustain a claim for false arrest where probable cause existed for the arrest. *Russo*, 479 F.3d at 196; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1966) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."). "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. . . . Federal courts evaluate probable cause in the light of the totality of the circumstances." *Frey v. Maloney*, 476 F.Supp.2d 141, 150 (D. Conn. 2007) (internal citations and quotation marks omitted). The amount of evidence required to establish probable cause "need not reach the level of evidence necessary to support conviction. . . ." *U.S. v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983).

      i. The Warrants Create a Presumption of Probable Cause

At the outset, the Court emphasizes that Plaintiff alleges Defendant Officers obtained arrest warrants prior to the disputed arrests. [Dkt. 30-1, ¶¶ 18, 28, 34-35, 48-49]. If an arrest is conducted pursuant to a warrant issued by a

neutral magistrate, it is "objectively reasonable for the officers to believe there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (quoting *U.S. v. Ventresca*, 380 U.S. 102, 109 (1965)). A plaintiff alleging that a warrant was issued on less than probable cause faces a "heavy burden" and must make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Golino*, 950 F.2d at 870 (internal quotation marks and citation omitted).

Plaintiff identifies no false statements on the warrant applications preceding her first two arrests. Plaintiff alleges that her third arrest was based, in part, on erroneous evidence of a "protective order" from a records check conducted by Officer Witcher. [Dkt. 30-1, ¶¶ 48-49]. Plaintiff also alleges that Officer Witcher applied for the third warrant citing probable cause to arrest for "Harassment 2nd and Threatening 2nd." [*Id.* at ¶ 49]. The Court examines whether Plaintiff's pleadings regarding her third arrest constitute a "substantial, preliminary showing" that Officer Witcher knowingly or with reckless disregard for the truth included material falsehoods on the warrant application.

When a plaintiff challenges the validity of a warrant based on alleged false statements, the plaintiff must make a "substantial preliminary showing" that the officer knowingly and intentionally, or with reckless disregard for the truth, made a material false statement in applying for the warrant. *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (internal citations and quotation marks omitted).

11

"Unsupported conclusory allegations of falsehood or material omission" cannot overcome the presumption of a warrant's validity; the plaintiff must make "specific allegations" supported by an offer of proof." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994). In other words, it is not enough to merely allege that there were errors in a warrant affidavit, because "misstatements or omissions caused by 'negligence or innocent mistake[s]' " do not rise to the level or knowingly false statements or statements made with reckless disregard for the truth. *U.S. v. Rajaratnam*, 719 F.3d 1139, 153 (2d Cir. 2013), *cert. denied*, 573 U.S. 916.

Plaintiff pleads no facts supporting the inference that Officer Witcher or any of the named officers knowingly or intentionally made false statements on the arrest warrant affidavits. Plaintiff alleges that the police were called three times by a resident complaining of threatening statements and messages from Plaintiff. [Dkt. 30-1, ¶¶ 12-14, 30-31, 48-49]. The complaint contains a number of conclusory allegations that the officers were "overzealous," arrested plaintiff with "no evidence," "fabricated" information, and "knew that a crime was being committed and made a decision to become an accessory after the fact." [Dkt. 30-1, ¶¶ 26, 39, 51-52]. Besides these statements, Plaintiff does not provide any specific facts that allow the Court to conclude that Defendant Officers "knowingly and intentionally, or with reckless disregard for the truth" made false statements on the arrest warrants.

To show that Officer Witcher was lying or "fabricating" evidence, Plaintiff must show not only that the information was false, but also either that Officer Witcher *intended* to put the false information in the warrant application, or that

12

Officer Witcher cared so little about whether the information was true that her writing the affidavit was "reckless." At most, the Amended Complaint shows that Officer Witcher's records check should have been more thorough. *See* [Dkt. 30-1, ¶¶ 48-49, 56-58].

Even assuming the truth of Plaintiff's allegations that Officer Witcher knowingly lied on the warrant affidavit, Plaintiff still has not alleged a claim for false arrest because Plaintiff needs to plead facts showing that the warrant would not have been approved without the alleged lies. *See U.S. v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005). To determine whether false statements on an affidavit are material, the Court looks at whether a hypothetical warrant that did not include the falsehood would still have been approved. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Plaintiff notes that the warrant was based not only on the alleged violation of the protective order, but also on Ms. Mayes's alleged harassing and threatening behavior. [Dkt. 30-1, ¶ 49]. The third arrest warrant was also issued after Plaintiff had already been arrested twice for issues with the same individual, LaJeffies Hill. Therefore, the facts in the complaint show that a magistrate would have had sufficient evidence to approve an arrest warrant. That means that Plaintiff does not plead facts supporting the contention that the protective order was "material" because probable cause existed without that information.

The Amended Complaint indicates that the magistrate approving the warrant may have had ample evidence, including victim statements, Plaintiff's prior history with the victim, and previous messages from Plaintiff's alleged

13

Facebook account and phone. Therefore, Plaintiff does not rebut the presumption of probable cause.

### ii. Evidence for Probable Cause

The alleged facts underlying the warrants further support a finding of probable cause. "The probable cause determination depends on the facts available to the officer 'at the time of the arrest and immediately before it.'" *Tuccio v. Papstein*, 516 F.Supp.2d 199, 203 (D. Conn. 2007) (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996)). "When information is received from a putative victim or an eyewitness, probable cause exists...unless the circumstances raise doubt as to the person's veracity. *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Probable cause can still exist where "a police officer was presented with different stories from an alleged victim and the arrestee." *Curley,* 268 F.3d at 70. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997). It may have been better procedure for the Defendant Officers to share information and investigate Ms. Mayes's version of events, especially in light of Ms. Mayes's alleged conversation with Officer McMorris. However, the officers' failure to conduct a more thorough investigation does not make the warrants invalid. *See Curley,* 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have

14

to prove plaintiff's version wrong before arresting him.") (internal citation omitted). Each of the three warrants was based, in part, on the complaint of Ms. Hill and on the initial alleged threatening Facebook and text messages. Before the first alleged arrest, Ms. Hill submitted a "victim account report." [Dkt. 30-1, ¶ 17]. For each arrest, the officers relied on some combination of statements from Hill, and Facebook and text messages on Hill's phone. This evidence was sufficient to establish probable cause. Once the Defendant Officers had probable cause and obtained warrants, they did not have a duty to determine beyond all doubt whether Ms. Mayes or Ms. Hill was in the right.

For the foregoing reasons, Plaintiff's claims against the Defendant Officers for false arrest are dismissed.

### b. *Malicious Prosecution*

An action for malicious prosecution requires a plaintiff to plead that "'(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice…'" *Ndoushani v. Southern Connecticut State University*, 95 A.3d 1248, 1255 (Ct. App. Conn. 2014) (quoting *Lo Sacco v. Young*, 564 A.2d 610, *cert denied*, 568 A.2d 793 (1989)). To sustain a claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must show "the initiation or pendency of judicial proceedings." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997). These

15

proceedings "may begin in any of a number of ways, *e.g.*, by the filing of an indictment, information, or other formal charge, or by an arraignment or a preliminary hearing." *Id.* Ms. Mayes does not allege that any judicial proceedings were brought against her. She only alleges that warrants were issued for her arrest. Therefore, Plaintiff cannot sustain a claim for malicious prosecution.

### D. Claim Against Steve McMorris for Violation of the *Brady* Rule

Plaintiff alleges that Defendant McMorris violated the *Brady* Rule by "withholding exculpatory evidence." [Dkt. 30-1, ¶ 40]. Namely, Plaintiff alleges that McMorris should have notified Officer Dragoi that LaJeffies Hill had filed a false complaint against Plaintiff. [*Id.* at ¶ 42]. Defendant argues that the claims against Defendant McMorris should be dismissed because Plaintiff does not allege that McMorris was personally involved in the arrests and because Defendant McMorris had no duty to share information with the other officer defendants in order to prevent Plaintiff's arrest. [Dkt. 18, at 10-12].

First, "[u]nder Section 1983, liability can only be imposed against defendants in their individual capacities for personal involvement in alleged constitutional deprivation." *Platt v. Incorporated Village of Southhampton,* 391 Fed. Appx. 62, 65 (2d Cir. 2010). Plaintiff does not allege that Defendant McMorris was personally involved in any of the alleged arrests.

Second, the *Brady* rule did not create a duty for Officer McMorris to share information with other police officers. The *Brady* rule requires prosecutors to share information with defense counsel prior to trial. *See Brady v. Maryland*, 373

U.S. 83, 87-88 (1963). The *Brady* rule does not impose duties on the day-to-day workings of police officers with regard to warrant applications. The "exculpatory evidence" referred to in case law discussion the *Brady* rule is evidence that could be used by the defense at trial, not evidence that could be used to verify probable cause.

Plaintiff has not pleaded a cause of action against Officer McMorris. Therefore, the claims against Officer McMorris must be dismissed.

IV. Conclusion

Plaintiff fails to plead facts stating a claim for relief. Therefore, Defendants' Motion to Dismiss is GRANTED. Plaintiff has also had the benefit of amending her original complaint following Defendants' motion to dismiss. As Plaintiff was still unable to state a claim even with the opportunity to address Defendants' legal challenges to the original Complaint, the Court is convinced that further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, this dismissal is with prejudice. The Clerk is directed to close this case.

IT IS SO ORDERED

/s/

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 25, 2019